UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**PRECON DEVELOPMENT CORPORATION, INC.,**

    **Plaintiff,**

v.                                                                                                Civil Action No. 2:24-cv-337

**THE UNITED STATES ARMY CORPS OF ENGINEERS,**

    **Defendant.**

## *MEMORANDUM OPINION AND ORDER*

Before the Court is a Motion to Dismiss the Complaint for Lack of Jurisdiction pursuant to the Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6) filed by the United States Army Corps of Engineers (the "Corps" or "Defendant"). ECF No. 18 ("Def.'s Mot."). Defendant filed a Memorandum in Support of the Motion. ECF No. 19 ("Def.'s Mem."). Plaintiff Precon Development Corporation, Inc., filed a Response in Opposition to Defendant's Motion. ECF No. 23 ("Pl's Resp."). Corps filed a Reply. ECF No. 24. The Court has considered the parties' memoranda, and this matter is ripe for judicial determination. For the reasons stated herein, the Corps Motion to Dismiss is **GRANTED**.

### I.    FACTS AND PROCEDURAL HISTORY

Relevant to the Corps' Motion to Dismiss and stated in the light most favorable to Precon, the following alleged facts are drawn from the Complaint and attachments thereto filed on May 22, 2024. Compl., ECF No. 1.

"Precon is the owner and developer of a 658-acre Planned Unit Development ['PUD']," known as Edinburgh, in Chesapeake, Virginia. *Id.* ¶ 12. In Edinburgh, 166 acres of wetlands are

1

part of the Northwest River watershed, and 4.8 of those acres "were the subject of the prior litigation between the parties." *Id.* ¶¶ 13–14. The Edinburgh Wetlands are poorly drained soil sitting twenty feet above sea level. *Id.* ¶ 15. "The Northwest River is a relatively permanent body of water connected to traditional navigable waters." *Id.* ¶ 16. The Northwest River is one of the relevant traditional navigable waters for the purpose of establishing jurisdiction under the Clean Water Act over the Edinburgh Wetlands. *Id.* ¶ 17. "The Edinburgh Wetlands are adjacent to a 2,500-foot-long man-made drainage ditch." *Id.* ¶ 18. The ditch connects to the Saints Brides Ditch, which joins another tributary about three miles downstream. *Id.* "Together, these tributaries form a channel that flows into the Northwest River." *Id.* The Edinburgh Wetlands and the Northwest River are about seven miles apart. *Id.* ¶ 19. "Edinburgh is situated on a drainage divide such that a portion of its wetland acreage drains towards the Northwest River while its other wetland acreage drains towards the Intracoastal Waterway," a traditional navigable water. *Id.* ¶¶ 20–21. Edinburgh is about four miles away from the nearest point of the Intracoastal Waterway. *Id.* ¶ 22.

Final Agency Action

Under 5 U.S.C. § 704, an "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." There are two criteria to establish a final agency action: 1) "the action must mark the consummation of the agency's [decision-making] process—it must not be of a merely tentative or interlocutory nature"; 2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

In 2015, the Corps obtained a successful decision from the United States Court of Appeals for the Fourth Circuit, which affirmed the lower court's judgment, finding that the Edinburgh Wetlands are subject to jurisdiction under the Clean Water Act. *Id.* ¶ 25; *Precon Dev. Corp. v.*

*Army Corps of Eng'rs (Precon II)*, 603 F. App'x 149, 150 (4th Cir. 2015). Precon alleges that the Fourth Circuit's judgment continues to impact its rights to develop Edinburgh, which satisfies the criteria in *Bennett*. Compl. ¶ 25.

Reduced Clean Water Act Jurisdiction

In 2015, the Fourth Circuit determined the Edinburgh Wetlands are subject to the Clean Water Act's jurisdiction based on the "significant nexus" test in *Rapanos v. United States*, 547 U.S. 715 (2006). *Id.* ¶ 26. However, in 2023, the Supreme Court in *Sackett v. Env't Prot. Agency*, 598 U.S. 651 (2023) held that the wetlands "must be indistinguishably part of a body of water that itself constitutes 'waters' under the [Clean Water Act]." Precon alleges that the "four miles separating the Edinburgh Wetlands from the nearest traditional navigable waters make it patently obvious that they are distinctly separate and apart from such waters." Compl. ¶ 29.

Precon requests that the Court "enter a Declaratory Judgment finding that the Edinburgh Wetlands are not 'waters of the United States' and are not subject to jurisdiction pursuant to the Clean Water Act," and to grant further relief. *See* Compl. at 5.

## II. LEGAL STANDARD

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 619 n.5 (4th Cir. 2018). There are several constitutional justiciability doctrines that emanate from this constitutional provision. This includes the doctrines of standing, ripeness, and mootness, and a prohibition against district courts issuing advisory opinions. *See United States v. McClure*, 241 F. App'x 105, 107 (4th Cir. 2007).

The standard of review for a challenge to the Court's Article III jurisdiction may be raised under either Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction or

3

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See Perry-Bey v. City of Norfolk, Va.*, 678 F. Supp. 2d 348, 360 (E.D. Va.), *aff'd*, 333 F. App'x 733 (4th Cir. 2009). When a defendant seeks dismissal under Rule 12(b)(1), the plaintiff bears the burden of proving subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 767, 768 (4th Cir. 1991). To determine whether subject-matter jurisdiction exists, a district court "may consider evidence outside the pleadings without converting the proceedings to one for summary judgment." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (citation omitted); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (a court may still "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic"); *see also* Fed. R. Civ. P. 10(c). If a court determines that it lacks jurisdiction over a matter, it must dismiss the action.

### III. DISCUSSION

Congress enacted the Clean Water Act ("CWA") to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Under Section 404 of the CWA, the Secretary of the Army, acting through the Chief of Engineers, "may issue permits, after notice and opportunity for public hearings for the discharge of dredged or fill material into the navigable waters at specified disposal sites." § 1344(a) and (d). "The Corps' permit decisions must be based on EPA guidelines." *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 315 (4th Cir. 1988). Section 1344(c) allows the Administrator of the EPA to prohibit the specification of any disposal site and deny or restrict the use of any disposal site. "It is quite clear that both the Corps and the EPA are responsible for the issuance of permits under the CWA and enforcement of their terms." *Nat'l Wildlife Fed'n*, 859 F.2d at 315.

The Corps and the EPA have defined "waters of the United States" in regulations. The "waters of the United States" includes: (1) traditional navigable waters, territorial seas, or interstate waters; (2) impoundments of water; (3) tributaries; (4) wetlands; and (5) intrastate lakes and ponds "that are relatively permanent, standing or continuously flowing bodies of water with a continuous surface connection to the waters identified" in (1)–(3). 33 C.F.R. § 328.3(a) (2023). Wetlands are "areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions. Wetlands generally include swamps, marshes, bogs, and similar areas." *Id.* § 328.3(c).

The Corps regulates certain activities in the "waters of the United States." § 320.1(a)(1). Section 320.1(b) describes the types of activities that are regulated. To determine if certain activities are subject to the jurisdiction of the CWA, the Corps will issue a formal determination concerning the CWA's applicability. *Id.* § 320.1(a)(6). A formal determination is a "jurisdictional determination," which is "a written Corps determination that a wetland and/or waterbody is subject to regulatory jurisdiction under Section 404 of the Clean Water Act. . . ." § 331.2. All jurisdictional determinations will be identified as either preliminary or approved. *Id.* While preliminary jurisdictional determinations are unappealable and advise property owners "that there may be waters of the United States on a parcel or . . . the approximate location(s) of waters of the United States on a parcel." *Id.* Approved jurisdictional determinations "[state] the presence or absence of waters of the United States on a parcel or a written statement and map identifying the limits of waters of the United States on a parcel." *Id.* Approved jurisdictional determinations "are clearly designated appealable actions" that the regulation defines to "constitute a final agency action." *Id.*; § 320.1(a)(6). Also, "[they] are binding for five years on both the Corps and the Environmental

5

Protection Agency, which share authority to enforce the Clean Water Act." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 595 (2016) (citing 33 U.S.C. §§ 1319, 1344(s); 33 CFR pt. 331, App. C).

Accordingly, "[i]n 2006, Precon announced a plan to develop ten additional residential lots in the Edinburgh PUD." *Precon Dev. Corp. v. U.S. Army Corps of Eng'rs (Precon I)*, 633 F.3d 278, 282 (4th Cir. 2011). However, after the Corps expressed displeasure with Precon pursuing additional residential lots, Precon limited its design to impact only 4.8 acres of wetlands. *Id.* Precon believed that the Corps did not have jurisdiction over the 4.8 acres of wetlands. *Id.* In 2007, Precon applied for a jurisdictional determination over the 4.8 acres of wetlands, and the Corps determined that it had jurisdiction. *Id.* Precon challenged the Corp's jurisdiction, and the district court upheld the Corps' denial of a CWA permit. *Id.* at 287; *Precon Dev. Corp. v. U.S. Army Corps of Eng'rs*, 658 F. Supp. 2d 752, 769 (E.D. Va. 2009). Precon appealed the district court's decision to the Fourth Circuit, which reversed the lower court's decision and remanded to the Corps to determine whether "the wetlands have a significant nexus with the Northwest River," in light of *Rapanos*. *Precon I*, 633 F.3d at 293. Specifically, the Fourth Circuit requested the Corps to document "why such wetlands significantly, rather than insubstantially, affect the integrity of navigable waters." *Id.* at 297.

On remand, the Corps issued an approved jurisdictional determination that the wetlands have a significant nexus with the Northwest River, and the district court determined that the Corps provided sufficient support for the denial of the CWA permit again. *Precon Dev. Corp. v. U.S. Army Corps of Eng'rs*, 984 F. Supp. 2d 538, 544 (E.D. Va. 2013). Precon appealed to the Fourth Circuit, who ruled in favor of the Corps finding a significant nexus between the wetlands and the Northwest River, establishing jurisdiction under the CWA. *Precon II*, 603 F. App'x at 151.

Here, Precon argues that the significant nexus test in *Rapanos* no longer controls for finding jurisdiction under the CWA because, in *Sackett*, the Supreme Court held that wetlands "must be indistinguishably part of a body of water that itself constitutes 'waters' under the CWA." Compl. ¶¶ 26–27; *Rapanos*, 547 U.S. 715 (2006); *Sackett*, 598 U.S. 651, 676 (2023). *Sackett* requires the parties to "establish first, that the adjacent [body of water constitutes] ... water[s] of the United States, (*i.e.*, a relatively permanent body of water connected to traditional interstate navigable waters); and second, that the wetland has a continuous surface connection with that water, making it difficult to determine where the water ends and the wetland begins." 598 U.S. at 678–79 (quotations omitted). Thus, Precon argues that the "four miles separating the Edinburgh Wetlands from the nearest traditional navigable waters make it patently obvious that they are distinctly separate and apart from such waters." Compl. ¶ 29.

However, the Corps raise three arguments for dismissal. Def.'s Mem. First, the Corps argues that the Court lacks jurisdiction because Precon's Complaint fails to challenge an agency action that is subject to review under the Administrative Procedure Act ("APA"). *Id.* at 8–15. Second, the Corps argues that the Court lacks jurisdiction to overturn the Fourth Circuit's decision in *Precon II*. *Id.* at 15–16. Third, the Corps asserts that the Court lacks jurisdiction because this case is not ripe for review. *Id.* at 16–18.

In Response, Precon argues that it is challenging the April 8, 2022, Corps' approved jurisdictional determination, which is a final agency action reviewable under the APA. Pl.'s Resp. at 3–4. Precon also asserts that the Corps' continued jurisdiction over the wetlands, including its most recent approved jurisdictional determination, is what it purports to challenge. *Id.* at 4. Lastly, Precon argues that the approved jurisdictional determination adversely impacts portions of the Edinburgh PUD known as "The Villages at Edinburgh." *Id.* at 5.

In its Reply, the Corps argues that Precon's Complaint is flawed, as Precon abandoned its initial cause of action and raised new factual allegations. Def.'s Reply at 3. According to the Corps, Precon now seeks to challenge an approved jurisdictional determination that the Corps issued to Amwell, LLC, Robert S. Ashburn, and William G. Ashburn in April 2022. *Id.* The Corps believes that Precon's Complaint is insufficient and that Precon fails to allege any legal relationship to Amwell, LLC.[1] *Id.* at 4 n.1. Furthermore, Precon's "continued series of acts" challenge fails because the APA does not recognize such a challenge. *Id.* at 4. Lastly, the Corps argues that Precon should seek a jurisdictional determination for its property rather than consume the Court's time in two different cases, especially since the 2012 jurisdictional determination that is at issue expired in 2017—at least eight years ago.[2] *Id.* at 5.

The APA does waive sovereign immunity for certain claims against the United States. 5 U.S.C. §§ 702, 704. Under the APA, an "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Thus, if a claim does not pertain to an agency action or a final agency, the United States is immune from suit. *Id.* However, a court must set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. An agency action "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). A rule is "the

---

[1] The Court notes that Precon relies on information not raised in its Compliant. *See U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 458–59 n.8 (4th Cir. 2013) (stating that a "plaintiff cannot cure pleading deficiencies in the [] complaint with later-filed supporting documentation on a motion to dismiss."). Moreover, Precon cannot rely on another party's approved 2022 jurisdictional determination, in which Precon was not a party, to support relief. Precon's reliance on the 2022 approved judgment is unavailing because the Court is unaware if the property at issue in the 2022 approved jurisdictional determination even belongs to Precon, and the Court does not know the legal relationship between Precon and the other entity. For the reasons stated above, the Court will not consider this issue.

[2] Precon filed a Motion for Relief in its original case on September 13, 2024, seeking relief from the district court's 2013 judgment, which is the same remedy it seeks in the instant action. *See Precon Dev. Corp. v. U.S. Army Corps of Eng'rs*, No. 2:08-cv-447, ECF No. 120 (E.D. Va.).

8

whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency. . . ." 5 U.S.C. § 551(4). An order is "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing." 5 U.S.C.A. § 551(6). To be "final," two requirements must be satisfied: "First, the action must mark *the consummation of the agency's decisionmaking process*—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which *rights or obligations have been determined* or from which legal consequences will flow." *Golden & Zimmerman, LLC v. Domenech*, 599 F.3d 426, 432 (4th Cir. 2010) (citing *Bennett*, 520 U.S. at 177–78).

Here, Precon's challenge of the Corps' successful defense of its 2012 jurisdictional determination and its continuing impact on the Edinburgh Wetlands is not an agency action, let alone a final agency action subject to judicial review.[3] The Corps' defense of its 2012 jurisdictional determination is not a "rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act" under the APA. The Corps' defense of its 2012 jurisdictional determination also does not meet the elements of finality under *Bennett* because first, it did not "mark the consummation of the agency's decisionmaking process," as it was the Corps' regular participation in the litigation process. Instead, the 2012 jurisdictional determination *actually* marked the consummation of the Corps' decision-making process because it was after the Corps issued an approved jurisdictional determination in 2012 that consummated the decision-making process. Second, the Corps' defense was not one in which "rights or obligations have been determined or

---

[3] Ultimately, the Corps' defense of its 2012 jurisdictional determination was pure litigation strategy.

9

from which legal consequences will flow" because, again, it was the Corps' defense to the lawsuit Precon filed. The actual rights or obligations flowed from the 2012 jurisdictional determination.

Moreover, the 2012 jurisdictional determination alleged impact on the Edinburgh Wetlands has since expired in 2017. As previously discussed above, an approved jurisdictional determination lasts for only five years. Precon cannot allege that the 2012 jurisdictional determination continues to impact the wetlands when it is no longer enforceable under the law.

Even if the Court viewed the Corps' defense of its 2012 jurisdictional determination as an "agency action" or a "final agency action," this Court does not have the authority to overturn the Fourth Circuit's 2015 decision in *Precon II*. *See Jones v. Lexington Cnty. Det. Ctr.*, 586 F. Supp. 2d 444, 449 (D.S.C. 2008) ("this court is of course bound by the holdings of a higher appellate court and may not ignore or overturn those decisions."). Thus, the Corps is immune from this lawsuit and this Court lacks jurisdiction because Precon fails to challenge an agency action or a final agency action as required under the APA.

## IV. CONCLUSION

Based on the foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. ECF No. 18.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
February /3, 2025

Raymond A. Jackson
United States District Judge